Case number 19-6333, Gary West, et al. v. KY Horse Racing Commission, et al. Oral argument not to exceed 15 minutes per side. Mr. Riccio, for the appellant, you may proceed. Thank you, Your Honor. May I reserve two minutes for rebuttal? Yes, you may. Thank you. May it please the Court, my name is Ronald Riccio. I represent the plaintiffs' appellants, Gary and Mary West. This is an appeal from the District Court's grant of the 12 v. 6 motion to dismiss. The standard of review is, of course, a mobile review. And unless the Court wishes otherwise, I plan to make three arguments in the following sequence. First, I plan to argue that the District Court correctly concluded that the Commission's Regulation Section 4-2 does not preempt the Kentucky Statute 13 v. 150, which is the statute that confers the power on courts to judicially review final orders of agency determinations. Secondly, I was going to argue that the steward's order disqualifying maximum security is a final order within the scope and meaning of 13 v. 150. And then finally, I would argue that the plaintiff's complaint sufficiently alleges the deprivation by the Commission and the stewards, who are state actors, of plaintiff's constitutionally protected property and liberty interest without the procedural due process guarantees of the 14th Amendment. So with respect to my first point, the District Court correctly concluded that an administrative agency regulation cannot supersede or preempt a conflicting statute. Were that to happen, it would violate court principles of separation of powers by which executive branch agencies cannot preempt a court's core judicial function of judicial review. In addition, there are two Kentucky statutes that specifically say that the Commission's regulations cannot supersede, modify, or vitiate Kentucky statutes. And then finally, the intermediate appellate court decision from a Kentucky state court did judicially review a final order of Kentucky stewards disqualifying the winner of the race. So the District Court correctly determined that the Commission's so-called no appeal rule does not preempt, cannot preempt 13 v. 150. The second point I'd like to make is that the stewards order disqualifying maximum security is a final order under 13 v. 150. The District Court, we contend, misinterpreted the words final order in 13 v. 150 when it concluded that the stewards order disqualifying maximum security was not a final order judicially reviewable under that statute. First off, the District Court did not apply the strong presumption, which has been recognized by this court and the Supreme Court, that statutes should not be interpreted to preclude judicial review of final agency determinations unless the legislative intent to preclude judicial review is clear and convincing. The cases say that this curriculum... This is Judge Evans. The arguments that you're making are based simply on reading of the statute and regulation. There's no Kentucky case law addressing these issues, is there? The only Kentucky case that addresses the question of the meaning of final order is the March case, which did give judicial review to a steward's decision to disqualify a horse in a race. There's no case in the United States in which a court, other than the District Court's opinion, in which a court has precluded judicial review and administrative review of a steward's disqualification order. But back to your basic question, Your Honor, we take the position that the court misinterpreted the statute as the statute is written. We don't believe the statute is ambiguous. We believe it's very clear that the definition of final order under 13b-150 is a combination of the definitional section of the chapter of the statute. A final order is the final disposition of an administrative hearing. An administrative hearing means any type, any type of formal adjudicatory proceeding. What the District Court concluded was that the steward's process by which they disqualified maximum security was not the product of an administrative hearing. And that, we suggest, was very flawed, and it was flawed because what the stewards did was conduct a process by which they had the sole and exclusive power to conduct the hearing. Their hearing consisted of receiving objections from Punjabis, which are in the nature of complaints. The stewards interviewed witnesses. They took testimony. They reviewed video evidence. They deliberated, much as Your Honors are deliberating and will deliberate, among themselves. They were governed by substantive decision-making criteria, which are set forth in Section 12, which we allege, and for purposes of this motion, is deemed to be true, were not followed and were misapplied. They rendered an oral opinion. They followed up their oral opinion, their written opinion, and then they openly adjudicated the plaintiff's rights by disqualifying plaintiff's horse, thereby denying plaintiffs all of the benefits of owning a Kentucky Derby winner. So we take the position that if you look at the plain meaning of the words, final order, and look at how those words are defined on the 13B.010, which is the definitional section of the chapter, if you look at the definition of final order, the definition of administrative hearing, to be any type of formal adjudicatory proceeding, then we take the position that the district court misinterpreted final order and produced a result which is in conflict with the legislative intent of the Kentucky Racing Commission. Now, going back to the March decision, that's the only decision in the area that I can tell that's been rendered. Does it have any bearing? If it does, what bearing does it have on the arguments you're making? I would take the position that it has no bearing on those things. It has no bearing. So your argument is based simply upon an interpretation of the statute versus the regulations, and there's no guidance from any Kentucky Supreme Court or any other Kentucky court in your position. That's your position, correct? There's no guidance from Kentucky's highest court. Under Kentucky law, the decision in March can be viewed, it can be used by other courts if there is no other controlling precedent. So even though it's unpublished, you can use it. I take the position it has no bearing on this for the reason that the court in March actually gave judicial review to the school's order. So in that regard, when the commission argues that March governs the outcome of this case, it's a wrong argument because they're using March to say there is no judicial review when in fact what the court in March did was to give judicial review. Do I think that there's other authority out there interpreting the words final order? Not that I know of, but I don't think we need to look to see how another court is going to interpret it because there's no ambiguity. And all we're dealing with is interpreting the words of the statute as the words of the statute are written. And it's very quite clear that final order is a final disposition of an administrative hearing. An administrative hearing is any type, I emphasize those words, your honors, any type of formal adjudicatory proceeding. And as I've explained, what the stewards did here is very similar to what judges do, administrative law judges do, hearing officers do. You take a complaint, you consider evidence, you evaluate the evidence, you apply a substantive criteria to the evidence, you make a decision, you render an opinion, you give a reason. All of that was done by the stewards. Now, the fact that the stewards did what they did in only 22 minutes and did it as we allege in derogation of the substantive decision-making criteria that was supposed to be applied and rendered an opinion which is internally inconsistent in terms of the oral opinion saying one thing and the written opinion saying another thing, that doesn't mean that the proceeding was not an administrative proceeding subject to the final order of 13B150. What it would have been... Counsel? Yes, your honor. Counsel, this is Judge Batchelder. I would be interested to know what bearing you think the Kentucky regulation has on this that says that the decisions of the stewards are not reviewable. That regulation, as the district court correctly held, that regulation cannot preempt the statute, cannot preempt 13B150, and the reason I say that, your honor, is basic separation of powers principles. You cannot have an administrative executive branch agency promulgate a regulation which then eviscerates the jurisdiction of the federal court to exercise a court's core function, which is the core function of judicial review dating back to the days of Marbury v. Madison, and what you can't have is you can't have a commission, as the Kentucky commission did here, do two things. First, they said the commission can't review the steward's disqualification order. Then they said that this court can't review what the stewards did. So, in other words, what that means is if the stewards want to flip a coin and decide who should be disqualified and who should not be disqualified, they can do that with impunity... One minute left. ...and without fear. Pardon me, your honor? You have one minute left. Thank you. Would the court want to hear any argument on a property interest question? I'm wondering what is your... and succinctly, what is the property or liberty interest you're claiming was deprived? It was a legitimate claim of an entitlement to pursue the right that was created by Section 5 of the Racing Commission Regulation to be declared the co-owner of the Kentucky Derby and to have the purse and the trophy escrowed pending final adjudication. The property right is the... Is there anything that you're claiming you have a property or liberty interest in that occurred prior to the certification of the race as official? Not prior to, but immediately after the horse crossed the finish line first. A property right approved by virtue of Section 5. And you don't need to have a property right. You don't need to have something in hand in order for a property right to be protected under the 14th Amendment. In the Perry case, Perry had nothing. Perry's contract was terminated, and he had nothing. And what he did is he made a claim that he had a right to a hearing to get something, which is exactly what we're doing here. We have a right to procedural due process to get something, and the something that we have a right to derives from an independent source. And the independent source is Section 5, and the commission created that right, and then they... Your time has expired. Thank you, Your Honor. You have rebuttal time. Mr. Waldron, or Ms. Waldron, excuse me. Good morning, Your Honor. May it please this Court and Mr. Riccio, in KRS 230.215, the Kentucky General Assembly proclaimed that participation in horse racing is a privilege and not a personal right. This means, among other things, that people who participate in racing, if and only if they agree to the rules of racing. It also means that there is no due process interest in the particular outcome of any racing events in the Commonwealth. Importantly, the same rules apply in every Kentucky horse race, whether it's a Friday night claiming race or the Kentucky Derby. In Kentucky, as in every racing jurisdiction, owls and disqualifications are determined in a summary fashion in the minutes immediately after the race. Pursuant to 810KR1,017, the steward's factual findings and discretionary determinations during the meet shall be final and shall not be subject to appeal. The finality of steward's decisions during the meet is the most common rule in United States racing jurisdictions. There are 34 racing jurisdictions in the United States, and 16 of those jurisdictions, including Kentucky, completely ban appeals of steward's calls during the race. Only a handful allow for appeals as contemplated by the West. Importantly, the West previously agreed to Kentucky's rules. As a conviction of licensure and for the privilege of participating in horse racing, the West agreed to abide by the Commission's regulations, including the provision that the steward's determinations are final. And this rule is here for a reason. To hold otherwise would turn the most exciting two minutes in sports into two years of protracted litigation. Just as it would be ludicrous to litigate an umpire's decision at a high school baseball game, it's also inappropriate to ignore Kentucky's regulations and allow the West to challenge a steward's unappealable disqualification determination. Well, Ms. Walton, this is Judge Bush. This is a little different than an umpire at a Little League game. You have a situation where you have a regulated sport where gambling is also sanctioned by the government as part of the sport, and there is an elaborate procedure by regulation as to how the stewards are to function. And also there was a lot more formality going on in this decision. This is not the normal umpire-referee call at a game where they maybe look at the replay camera video and make a call. They actually issued an order saying what their decision was after interviewing witnesses. Doesn't this look more like an agency determination that would be subject to this statute that says all final orders of an agency shall be subject to judicial review? Your Honor, the steward's decision is not a final order. Specifically, it's important to take a look at a couple of terms, and I agree with Mr. Riccio when he said that it's very important to take a look at the definition of final order. CARES 13B.010 defines a final order as being the final disposition of an administrative hearing whenever made effective by an agency head. And an administrative hearing is further defined as a formal adjudicatory proceeding. And I would like to look at the terms agency head and formal adjudicatory proceeding. The steward's decision to disqualify maximum security is not a final order because, first, the stewards are not the agency head of the rating commission, and, second, their decision-making process is not sufficiently formal to constitute a hearing. I'll go ahead and talk about the second portion first since it was discussed so much in the previous statement. An administrative hearing is a formal adjudicatory proceeding, and there are specific examples in CARES 13B about what a 13B administrative hearing requires. First, it absolutely requires a hearing officer to preside over the conduct of a hearing as set forth in 13B.080. A hearing officer can't be a steward unless the steward also took 18 classroom hours of initial hearing officer training and maintained that training by six classroom hours per year. None of us have taken those continuing legal education hours. A hearing officer also has to give both parties the chance to file written pleadings, motions, objections, and offers of settlement. When the stewards made their decisions, neither party had the chance to file any of those documents because it was a summary decision made shortly after the conclusion of the race meet. A hearing officer also has to afford all parties the opportunity to respond, present evidence and arguments, conduct cross-examination, and submit rebuttal evidence. When the stewards made their decisions, neither party took any of those actions or had the opportunity to do so. Any party to a CARES 13B administrative hearing may choose to be represented by counsel or another professional, and in this situation, neither party had that opportunity. An administrative hearing also has to be open to the public unless it's specifically closed to submit to a provision of law, and yet the stewards' decision-making process was not conducted publicly. As a result, this was not an administrative hearing, and their decision was not a final order. But in addition to all of that, the stewards are not considered agency heads. To use the metaphor from previous, the stewards are essentially like umpires at racing. Regulations say that we have to exercise immediate supervision, control, and regulation of racing at license meets, which is kind of a way of saying that they call balls and strikes. In contrast, the full 16-member racing commission is actually the agency heads for the purpose of final orders. When we do have a CARES 13B hearing, it's not the steward to sign off on the final order, either approving or amending the hearing officer's recommended order. Instead, it's the full commission who conducts the vote as to how they should move. And another racing commission statute provides a little bit further guidance. ARS 230.330 allows any appellate to agree by any, quote, final order of the racing commission to appeal to frankness of the court. This statute does not refer to any final order of the stewards, because the stewards are not considered agency heads. Ms. Walton, this is Judge Bush again. I'll ask you the question I ask your opposing counsel. What Kentucky case law is there? Is March the only case that deals with the issues that we're discussing? Your Honor, in Kentucky state court, I agree with opposing counsel that March v. KHRC is the case that's on point. In that particular case, the court of appeals addressed a claim that's virtually indistinguishable from the West. In March, as you know, a horse called Ethical Warrior crossed the finish line first at Turfway Park. However, its jockey had committed a careless riding foul. And as a result, Ethical Warrior was disqualified and the jockey was suspended. The Kentucky court of appeals cited the 810KR14017 as being dispositive and told that the disqualification determination was final and nonreviewable. In fact, the hearing officer in full commission determined that no appeal was available from the stewards' decision to disqualify a horse for a foul. The March court then received the commission's final order denying an appeal of the disqualification. And in filing for the commission, the Kentucky court of appeals held that Ethical Warrior's owner did not have a right to appeal the disqualification. Instead, that disqualification was final and nonreviewable. Importantly, the court of appeals never found that it had the right to conduct a KRS-13B review of the stewards' disqualification decision. I would argue, Your Honor, that a further case arising out of this court in 1990 is also related to the issue. Specifically, White v. Turfway Park Racing Association is the point. And in that case, the court held that it's inappropriate for a federal court to determine the winner of this race. Counsel, did you cite that case in your brief? Your Honor, I did. What's the citation? The citation is 909F2941, and that's a Sixth Circuit case from 1990, White v. Turfway Park Racing Association. And this was a case about a disappointed veteran. That veteran asked for precisely the same relief that the West seeks today. Specifically, the plaintiff asked the court to satisfy the steward's decision as to the winner of a race and install a different race. And the West court made at least two holdings that are salient to this case. First, as in this case, just as owners do, veterans agree to be bound by the rules of racing, which hold that stewards' decisions are final. Those rules are in place for a reason. If every leaving veteran or owner could challenge the eligibility of winning horses, then cracked owners, stewards, racing officials, and the commission would be subject to similar disputes and litigation. If a veteran doesn't like Kentucky's rules, then he can refrain from making a bet in Kentucky. And in this case, if an owner doesn't like Kentucky's rules, then he can refrain from racing there. The fourth court held that plaintiff's demand in that case would be as provocative as asking the court to override the decision of an umpire in a baseball game. And the second holding that is relevant to this case is that the court held that the courts generally are not appropriate forms for adjudicating claim to sporting events violations that allegedly resulted in prospective economic loss. That holding applies to horse owners just as much as it does to veterans. Your Honor, I would also like to briefly address the claim that the West suffered a due process violation as it relates to 810-KR-100017, Section 5. We have two responses to the West's argument. Before a plaintiff may raise a due process challenge, he has to identify a due process life, liberty, or property interest. Under Kentucky law, the West simply cannot demonstrate a property interest in a first. As the court held in March versus Kentucky Horse Racing Commission, the most that someone can demonstrate in that case is a privilege and not first. Under KRS 235-215, participation in horse racing is a privilege and not a personal right. And moreover, the stewards have complete discretion to disqualify horses for fouls as set forth in 810-KR-10016 and 10017. In 10016, it specifically states the stewards have the discretion to determine whether a foul occurred, if the foul altered the finish of the race, and whether an offending horse should be disqualified. In 10017, the regulation again states that the stewards have the discretion to determine the extent of a disqualification, if any, and then further states that factual findings and determinations should be final and not subject to appeal. As in March, one cannot forfeit something that one did not possess. The horse that crossed the finish line first doesn't really win the race if a foul was committed. And similar to the ethical lawyer horse in that case, Maximum Security's curse was not forfeited. It was awarded to the horse that won the race. Counsel, let me ask you a question about the vagueness challenge about the regulation of using the word clear. What do you understand the meaning of the word clear is for the stewards' authority to disqualify a horse? The stewards' authority to disqualify the horse is entirely discretionary. It is our understanding that the term clear should not be better defined. While the West contend that the word clear invites arbitrary decisions by the stewards, I would argue that 810AR14016 is a regulation that allows complete discretion by the stewards to determine whether a foul existed in the first place, what to do about that foul as far as whether it altered the course of the race, and then whether the horse would be disqualified as a result. A person has the first established a life, liberty, or property interest that is sufficient to trigger the protection of a due process foul before being allowed to raise a due process challenge. And the West haven't made that showing, simply because the benefit that they're seeking is entirely discretionary with the stewards pursuant to the regulation at issue. In addition, Your Honor, when we go back to the question of Section 5, Section 5 only applies if the race's result is placed under 2. And in this case, the West truly did not place the result under 2. Instead, they simply tried to appeal the disqualification determination, which is not allowed under Section 4 of the very same regulation. Section 4 of the regulation states explicitly that disqualification determinations shall be final and shall not be subject to appeal. So is it the Commission's position that the West should have raised an objection before the race was certified as official? Your Honor, it's the Commission's contention that the West objecting to any sort of disqualification determination is entirely impermissible under the regulation. They could have certainly raised an objection prior to the race being official, but as it related to the disqualification of their horse, they simply don't have that right. And that is because, number one, racing is a privilege and not a personal right. The West agreed to the stewards' disqualification decision to be final as a condition of participating in the privilege of racing. And this is the most common rule in United States racing jurisdictions. Your Honor, I notice my time is up. May I be allowed to make a brief concluding remark? Very briefly, please. In conclusion, Your Honor, the District Court issued a well-written and well-reasoned opinion which should be affirmed. The Wests do not have a right to a court appeal under 13b because 13b doesn't convey hearing rights, apart from what is granted by the agency's own statutes and regulations. The KHRC's regulations specifically state that there is no right to an appeal when a horse is disqualified, nor do they have a due process right to a particular outcome from a sporting event. Thank you, Your Honor, for your time and consideration. Thank you, Ms. Welzink. Mr. Riccio. Thank you, Your Honor. I have a few points with respect to the right of the Wests to object. Section 5 of the Commission Regulation specifically confers upon the owner of the horse who crossed the finish line in a race, in this case maximum security, the right to challenge the official result. So the suggestion that we have no right to challenge what happened here is undercut by Section 5. With respect to the discretion of the stewards to disqualify a horse, Section 12 of the Commission's regulations has substantive decision-making criteria which must be followed. There is no discretion not to follow the elements that needed to be satisfied in order to disqualify a horse. Next, with respect to the definition of administrative hearing, counsel referred to it as being formal adjudicatory proceeding. I'm sure it was inadvertent, but she did not mention the fact that those words are preceded by the words, any type of formal adjudicatory proceeding. Next, with respect to the privilege of...  Pardon, Your Honor? You have one minute left. Thank you. With respect to the privilege versus right distinction, the Kentucky General Assembly has no power to determine whether or not there's a constitutionally protected property interest. That's the court's function. A state cannot condition a statutory entitlement on a beneficiary's acceptance of process so minimal that it fails to satisfy constitutional standards. With respect to the umpire versus steward distinction, the stewards are state actors. Umpires are not. What the stewards did in this case would be the equivalent of umpires changing the rule of the game. Instead of having three strikes and they're out, the umpire decides you can have four or five strikes or no strikes. So what we're dealing with here is not a judgment called by the stewards. We're dealing here with changing the rules of the game to fit their purposes and to make that decision arbitrarily made, we allege, never subject to judicial review. Finally, Your Honor, if this decision of the district court is not reversed, what it means is that the steward's decision to disqualify a horse is never reviewable by anybody, ever, and Kentucky will be the only jurisdiction in the United States in which a steward has unlimited power to disqualify horses and nobody can change it. Not the commission, not a court, not anybody. The stewards are above the law. Thank you, Your Honor. Thank you, Mr. Riccio, and thank you, counsel, for both sides. The case will be submitted.